UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| BESSIE WOODWARD, individually and as a Successor in Interest to LYLE WOODWARD; and EDWARD WOODWARD, individually and as Successor in Interest to LYLE WOODWARD, | Case No.: 17-CV-2369 JLS (KSC) **ORDER GRANTING PLAINTIFFS' MOTION TO AMEND FIRST AMENDED COMPLAINT** (ECF No. 33) |
|---|---|
| Plaintiffs, | |
| v. | |
| COUNTY OF SAN DIEGO; TREVOR NEWKIRK; and DOES 1–20, | |
| Defendants. | |

    Presently before the Court is Plaintiffs Bessie and Edward Woodward's Motion to Amend Plaintiffs' First Amended Complaint ("Mot.," ECF No. 33). Defendant County of San Diego (the "County") filed a Response in Opposition to ("Opp'n," ECF No. 36) and Plaintiffs filed a Reply in support of ("Reply," ECF No. 38) Plaintiffs' Motion. After considering Plaintiffs' proposed amendments, the Parties' arguments and the law, the Court **GRANTS** Plaintiffs' Motion.

/ / /

/ / /

1

**BACKGROUND**

On December 3, 2016, inmate Clinton Thinn attacked and strangled inmate Lyle Woodward inside a cell of the San Diego Central Jail (the "Jail"). Mot. at 5. A week later, Woodward died from his injuries. *See, e.g.*, First Am. Compl. ("FAC," ECF No. 5) ¶¶ 16, 19.

Plaintiffs are Woodward's parents. *See id.* ¶¶ 6–7. They filed their original Complaint on November 22, 2017, setting forth five causes of action against the County, including two federal claims for survival and deprivation of familial relationship under the Fourteenth Amendment and three state-law claims for negligence pursuant to California Code of Civil Procedure § 377.30, failure to summon medical care pursuant to California Government Code § 845.6, and wrongful death. *See generally* ECF No. 1. On January 11, 2018, Plaintiffs filed their First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), adding Defendant Trevor Newkirk. *See generally* FAC.

At the September 12, 2018 Early Neutral Evaluation conference, Magistrate Judge Karen S. Crawford proposed that the County produce the Jail's classification documents concerning Woodward's housing assignment. Mot. at 5. On November 20, 2018, Magistrate Judge Crawford entered the original scheduling order, specifying that "[a]ny motion to join other parties, to amend the pleadings, or to file additional pleadings shall be filed by December 21, 2018," ECF No. 25 ¶ 1, and that "[a]ll fact discovery shall be completed by all parties by March 29, 2019." *Id.* ¶ 2.

On March 22, 2019, the Parties filed a joint motion to amend the scheduling order, specifically seeking to extend the discovery cut-off date from March 29, 2019 to May 29, 2019. *See* ECF No. 29 at 2; Mot. at 6. The Parties indicated that,

> due to the nature of stored information at the jail, a large portion of information was not readily available for output. . . . Due to the extra time needed to locate, capture, and produce the written discovery, the parties need additional time to analyze the new information, prepare for the corresponding depositions of persons most knowledgeable on the information, and take those depositions.

ECF No. 29 at 2. Magistrate Judge Crawford granted the Parties' request. ECF No. 30.

On May 23, 2019, Plaintiffs deposed Sergeant Richard Haar, who testified as the County's person most knowledgeable on topics relating to the Jail's computer system, referred to as the Jail Information Management System ("JIMS"). *See* Mot. at 6–7. At the deposition, Sergeant Haar testified that, based on his knowledge of JIMS and the Jail's practices, Deputy Stratton was the person who placed Woodward and Thinn in the same cell. *Id.* at 7; ECF No. 33-5 at 76:6–17, 77:7–12. He also testified that the Jail's policies and practices would permit Deputy Stratton to make the cell assignment without reviewing their inmate histories in JIMS, ECF No. 33-5 at 142:7–13, 150:4–15, and would permit Deputy Stratton to make the cell assignment even having full knowledge of Woodward's and Thinn's histories of mental health problems and violent episodes. *Id.* at 147:2–9, 149:5–152:4.

Based on this new evidence obtained at Sergeant Haar's deposition, Plaintiffs moved to amend their First Amended Complaint on June 25, 2019. *See generally* ECF No. 33.

## LEGAL STANDARD

Once the court has filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16, a party moving to amend a pleading must first satisfy the appropriate standard under Rule 16. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). Rule 16 establishes a timetable for amending pleadings. *Id.* at 607. When the party moves to amend a pleading after the scheduling order, but before the final pretrial conference, Rule 16(b) requires that the moving party show "good cause" for modifying the order. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *Johnson*, 975 F.2d at 607–08. "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. "The district court may modify the pretrial schedule 'if it cannot reasonably be met
///

despite the diligence of the party seeking the extension.'" *Id.* (quoting Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)).

If "good cause" exists to amend the scheduling order, the court has discretion to grant or deny leave to amend a pleading pursuant to Federal Rule of Civil Procedure 15(a). Fed. R. Civ. P. 15(a). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Accordingly, Rule 15(a)'s "policy of favoring amendments" should be applied with "'extreme liberality.'" *Id.* (quoting *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406 (9th Cir. 1960)). Nonetheless, leave to amend should not be granted automatically. Whether the court should grant leave to amend depends on four factors: "(1) bad faith on the part of the plaintiffs; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment." *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).

## ANALYSIS

Through the instant Motion, Plaintiffs seek to remove Defendant Newkirk and to add Deputy Stratton as a Defendant. *See* Mot. at 11; *see also generally* ECF No. 33-3. Plaintiffs also seek to drop their claim for failure to summon medical care and to add a claim against the County pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (2018). *See* Mot. at 11; *see also generally* ECF No. 33-3.

**I.   Amendment Pursuant to Rule 16(b)**

Plaintiffs maintain that they have satisfied Rule 16(b)'s good cause requirement because their proposed amendments were prompted by new evidence they obtained through the discovery process. Mot. at 9–11. Specifically, Plaintiffs seek to amend their First Amended Complaint based on the following specific, newly discovered facts: (1) Deputy Stratton was the person who placed Woodward and Thinn in the same cell; (2) Deputy Stratton's conduct did not violate the Jail's policies and practices; and (3) the Jail's classification system and cell assignment procedures affirmatively enabled and

4

permitted the placement of Woodward and Thinn in the same cell despite the inmates' documented histories of mental health problems and recent episodes of violence. *Id.* at 10–11.

When determining whether "good cause" exists under Rule 16(b), the court "primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *See id.* at 609.

### A. *Plaintiffs' Diligence*

Plaintiffs argue that they were diligent in seeking amendment because they sought documents concerning the classification and housing of Woodward and Thinn early in discovery, reviewed documents, identified areas for supplementation, and engaged in swift meet and confers. Mot. at 9. The County, on the other hand, contends that the newly discovered facts do not establish good cause because Plaintiffs obtained, or should have obtained, the evidence earlier in the discovery process. Opp'n at 4–7.

Under Rule 16(b), a finding of diligence is proper when the moving party obtains new evidence through the discovery process and promptly moves to amend the pleading. *See, e.g.*, *Fru-Con Const. Corp. v. Sacramento Mun. Util. Dist.*, No. S-05-583, 2006 WL 3733815, at *4 (E.D. Cal. Dec. 15, 2006) ("Allowing parties to amend [under Rule 16] based on information obtained through discovery is common and well established."). But "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609 (holding that plaintiff's failure timely to review evidence produced earlier in discovery did not establish good cause).

Here, Plaintiffs discovered new evidence on May 23, 2019 at Sergeant Harr's deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). Mot. at 6–7, 10–11. Prior to this deposition, the County made several productions of documents relating to Woodward's cell assignment and classification records. *Id.* at 5–6. After each production, Plaintiffs promptly reviewed the documents and followed up on new evidence. *Id.*

5

On March 22, 2019, the Parties filed a joint motion to amend the original scheduling order to extend the discovery deadline to May 29, 2019. ECF No. 29. The Parties represented to the Court that the scheduling order "'[could not] reasonably be met *despite the diligence of the part[ies]* seeking the extension'" because jail personnel had difficulty collecting discoverable information from JIMS. *See id.* ¶ 1; *Johnson*, 975 F.2d at 609 (emphasis added) (quoting Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)). Due to the County's delayed production, the Parties "need[ed] additional time to analyze the new information, prepare for the corresponding depositions of persons most knowledgeable on the information, and take those depositions." ECF No. 29 at 2. Magistrate Judge Crawford granted the motion, finding "good cause" under Rule 16(b). ECF No. 30; *see* Fed. R. Civ. P. 16(b). It was during this extended discovery period that Plaintiffs took Sergeant Haar's deposition and uncovered the new evidence which prompted their motion to amend. For all of these reasons, the Court finds that Plaintiffs were diligent throughout the discovery process.

Although the County contends that Plaintiffs should have added Deputy Stratton sooner, the County is responsible for the delay, not Plaintiffs. The County's first production of documents contained reports and declarations denying Deputy Stratton's involvement with Woodward's cell assignment. Reply at 3–4. When Plaintiffs asked the County who approved Woodward and Thinn to be in the same cell, the County referred Plaintiffs to several JIMS documents. Mot. at 7; Reply at 5. On May 23, 2019, Sergeant Haar explained the JIMS documents, revealing that it was Deputy Stratton who assigned Woodward and Thinn to the same cell. Mot. at 7; ECF No. 33-5 at 76:6–17, 77:7–12. Consequently, the Court finds that Plaintiffs were diligent in identifying Deputy Stratton as a Defendant.

At Sergeant Haar's deposition, Plaintiffs notified the County of their intent to seek leave to amend their complaint to reflect the new disclosures. Reply at 5. Plaintiffs filed their Motion on June 25, 2019, approximately one month after the deposition and only days after receiving the deposition transcript. *See* Mot. at 6, 8; ECF No. 33. Therefore, the

Court finds that Plaintiffs were diligent within the meaning of Rule 16(b) because they carefully obtained new evidence through the discovery process and promptly moved to amend their complaint in light of the new evidence.

### B. *Prejudice to Defendants*

Plaintiffs urge that Defendants will not suffer prejudice if they are permitted to file an amended complaint because Defendants have been in possession of the facts underlying Plaintiffs' new claims since the contemporaneous documentation of each event in 2016 and will have the opportunity to undertake additional discovery contingent on the Court's approval. Mot. at 11–12; *see also* ECF No. 35 ¶ 1. The County contends that the timing of the proposed amendments will result in prejudice because Defendants will have to undertake additional discovery, invest additional resources, and modify their expert reports and summary judgment strategy after expending significant resources on the case as previously pled and litigated. Opp'n at 7–8. Plaintiffs respond that the need for additional discovery will be limited and that amendment will not require the Parties to duplicate past discovery. Reply at 3, 7.

Although a need to reopen discovery and therefore delay proceedings supports a finding of prejudice, *see Lockheed*, 194 F.3d at 986, such prejudice may nonetheless be insufficient to deny leave to amend. Whether or not prejudice justifies leave to amend under Rule 16(b) is a question of degree. *Johnson*, 975 F.2d at 609. Because diligence is the primary focus of a Rule 16(b) inquiry, the prejudice to the opposing party must be significant when the moving party has acted diligently in bringing the motion. *See, e.g.*, *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 531 (N.D. Cal. 1989) (holding that additional depositions of numerous witnesses across the country, additional document searches, and additional written discovery did not constitute undue prejudice to the defendant in light of the plaintiffs' credible representations that new facts were revealed during the course of discovery); *cf. Lockheed*, 194 F.3d at 986 (holding that a need to reopen discovery and therefore delay proceedings justified denial of leave to amend

///

because nothing in the amended complaint relied on new facts and the plaintiff did not explain the delay).

Here, Plaintiffs have stipulated to extend the deadlines for discovery, expert reports, and dispositive motions so that Defendants can adequately respond to the additional parties and claims. Mot. at 12; *see also* ECF No. 35 ¶ 1. Consequently, Defendants' ability to litigate this case on the merits will not be prejudiced by leave to amend beyond the additional time and expense Defendants will be required to invest to prepare their defense in light of the new evidence. Ultimately, the Court finds that the degree of this burden to Defendants is not sufficient to deny leave to amend. First, the scope of discovery will not change considerably, and Defendants have been in possession of the responsive facts and documents since the inception of the case. Mot. at 11–12. Since the November 18, 2018 Early Neutral Evaluation conference, Plaintiffs have conducted discovery into the Jail's policies and practices concerning the housing of inmates with mental illness or histories of violence, Mot. at 5, 9; Opp'n at 4–6, and the identity of Deputy Stratton. Reply at 4; Opp'n at 6. Accordingly, the need for further discovery will be limited. Reply at 3.

Second, when Plaintiffs obtained new evidence at the deposition of Sergeant Haar, they immediately notified the County of their intent to file the present Motion. Reply at 5. Approximately three weeks later, the County received a draft of the amended complaint, which the Parties discussed on June 18, 2019. Mot. at 7–8. Consequently, the majority of Defendants' expert discovery took place after Defendants received notice of the proposed modifications and should not require Defendants to duplicate their efforts or expenses. Opp'n Exs. A–D, ECF No. 36-1. There also does not appear to be any need for the Parties to re-depose any witnesses in light of the new evidence. Reply at 3.

In short, the prejudice to Defendants will be minimal if Plaintiffs' Motion is granted. Accordingly, the Court finds that the degree of prejudice to Defendants is outweighed by Plaintiffs' diligence under Rule 16(b) and, therefore, Plaintiffs' Motion satisfies the "good cause" requirement.

///

## II. Amendment Pursuant to Rule 15(a)

The County contends that Plaintiffs' Motion fails under Rule 15(a) because amendment will cause undue delay and prejudice to the opposing party and Plaintiffs' claims against Deputy Stratton are futile. Opp'n at 7–9. Plaintiffs counter that amendment will not cause prejudice to Defendants and that Deputy Stratton is not entitled to qualified immunity because he violated Woodward's constitutional rights. Mot. at 11–14; Reply at 7.

Whether a court should grant leave to amend pursuant to Rule 15(a) depends on four factors: "(1) bad faith on the part of the plaintiffs; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment." *Lockheed*, 194 F.3d at 986. In considering these factors, the court "must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Webb*, 655 F.2d at 979. Because Rule 15(a) "favor[s] amendment[]," *Johnson*, 975 F.2d at 607, "the nonmoving party bears the burden of demonstrating why leave to amend should not be granted." *Nissou-Rabban v. Capital One Bank (USA), N.A.*, 285 F. Supp. 3d 1136, 1145 (S.D. Cal. 2018); *see also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

Here, Plaintiffs seek leave to amend in good faith, prompted by evidence newly uncovered during the discovery process. *See supra* Section I. Although amendment will cause Defendants some additional time and expense, the degree of prejudice to Defendants is minimal and Plaintiffs are not to blame. *Id.* Therefore, under the "liberal amendment policy" of Rule 15(a), the first three factors do not justify denial of leave to amend. *Johnson*, 975 F.2d at 609. This leaves only the County's argument that Plaintiffs' claims against Deputy Stratton are futile because he is shielded by qualified immunity. *See* Opp'n at 9. Plaintiffs respond that Deputy Stratton is not entitled to qualified immunity because his conduct violated Woodward's clearly established constitutional rights. Reply at 7.

"To determine whether an officer is entitled to qualified immunity, a court must evaluate two independent questions: (1) whether the officer's conduct violated a

constitutional right, and (2) whether that right was clearly established at the time of the incident." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1066–67 (9th Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "Defendants are only entitled to qualified immunity as a matter of law if, taking the facts in the light most favorable to [the plaintiff], they violated no clearly established constitutional right." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008).

Here, Woodward had a clearly established "[constitutional] right to be free from violence at the hands of other inmates" when Deputy Stratton placed him in a cell with inmate Thinn. *See Castro*, 833 F.3d at 1067–68 (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)); Mot. at 5. Inmates who sue prison officials for injuries suffered at the hands of other inmates may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause. *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Under the Eighth Amendment, a violation occurs only if the prison official knowingly exposed an inmate to a substantial risk of serious harm, *Farmer*, 511 U.S. 825, 842–44, whereas the Fourteenth Amendment standard is less exacting, requiring only that the prison official made an intentional decision with respect to the conditions under which the plaintiff was confined and that a reasonable officer would have appreciated the high degree of risk posed by those conditions. *Castro*, 833 F.3d at 1070–71.

Taking the facts in the light most favorable to Plaintiffs, the Court cannot say that Deputy Stratton did not violate Woodward's constitutional right to be free from violence at the hands of other inmates—whether under the Eighth or Fourteenth Amendment—when he placed Woodward in the same cell as inmate Thinn. On the one hand, Thinn had a documented history of attacks on other inmates, including an attack at the George Bailey Detention Facility on November 1, 2016, during which he choked a neighboring inmate, causing the victim to suffer serious harm. Mot. at 5–6, 9, 12, 14. On the other hand, Woodward had a documented history of mental health problems and a tendency to create tension that might provoke violence. *Id.* at 7, 13. Viewing these facts most favorable to

Woodward, a reasonable juror could conclude that Deputy Stratton exposed Woodward to a substantial risk of serious harm that a reasonable officer would have appreciated when he intentionally placed both Woodward and Thinn in the same cell. Further, because Deputy Stratton knew both inmates, *see* Mot. at 14 n.1; ECF No. 33-2 ¶ 52, a reasonable juror could infer that he had actual knowledge of the substantial risk of serious harm to Woodward's safety in satisfaction of the more stringent Eighth Amendment standard. Consequently, the County has failed to establish that Deputy Stratton is entitled to qualified immunity as a matter of law such that Plaintiffs' proposed amendment would be futile. The Court therefore concludes that Plaintiffs should be granted leave to amend under Rule 15(a).

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiffs' Motion (ECF No. 33). Plaintiffs **SHALL FILE** their Second Amended Complaint, previously filed as ECF No. 33-2, within seven (7) days of the electronic docketing of this Order.

**IT IS SO ORDERED.**

Dated: April 10, 2020

Hon. Janis L. Sammartino
United States District Judge